UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LEOBARDO MERCADO, | |
| Petitioner, | |
| v. | CAUSE NO.: 3:23-CV-228-TLS-MGG |
| WARDEN, | |
| Respondent. | |

### OPINION AND ORDER

Leobardo Mercado, by counsel, filed a habeas corpus petition challenging his 2018 child molestation conviction in Elkhart County under case number 20D03-1510-FA-23. ECF No. 1. For the reasons stated below, the Court denies the petition.

### BACKGROUND

In deciding the petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals set forth the facts underlying Mr. Mercado's conviction as follows:

> M.F., who was born in September of 2000, lived with her mother Laura ("Mother"), step-father Francisco ("Francisco") (collectively "parents"), and her two younger siblings in Elkhart, Indiana and had lived there since she moved from Mexico at age six or seven. Mother's sister Beatriz ("Beatriz") lived in Chicago with her husband Mercado at this time, and M.F. referred to Mercado as "Uncle." Over the years, Mercado, Beatriz, and their children would visit M.F. and her family in Elkhart. They would stay in Mother's and Francisco's apartment during holidays, summer vacations, and for M.F.'s birthdays. Sometimes, Mercado and Beatriz would pick up M.F. in Elkhart and bring her to Chicago to spend time with them.
>
> Mercado began grooming M.F. at an early age. He and Beatriz treated M.F. differently than her siblings. They paid more attention to her, took her places that they did not take the other children, and bought her gifts that they would not buy the other children. When Mercado and his family visited M.F. and her family, Mercado would reach under M.F.'s underwear to touch her breasts and to digitally penetrate her vagina.

Mercado and his family visited M.F. and her family to celebrate M.F.'s fourteenth birthday. One evening, the family, including Mercado and M.F., were watching television in the living room. M.F. fell asleep on the couch, and she awoke to find Mercado kneeling beside her and touching her. M.F. tried to get up and Mercado asked where she was going. M.F. told him she wanted to go upstairs, but Mercado told her to not leave and held her down on the couch. As M.F. tried to push him away, Mercado put one hand under her shirt and started moving his hand toward her breasts and put his other hand down her pants, rubbed her vagina, and penetrated it with his fingers.

Mercado told M.F. not to tell anyone, saying no one would believe her because he was an adult, and she was just a child. Mercado also told M.F. that if she told others what Mercado had done, M.F. would never see Beatriz again, which M.F. interpreted as a threat to Beatriz.

After she turned fourteen, M.F. began first communion classes at her family's Catholic parish. Before M.F. could take her first communion, she was required to confess to her priest. During her confession, M.F. told the priest that she thought she was a bad daughter because her uncle had touched her inappropriately. The priest encouraged M.F. to tell her parents.

Later that week, M.F. was in the dining room with Mother talking about selecting godparents for her first communion, and her mother suggested Beatriz and Mercado; M.F. began to cry. M.F. explained that Mercado had been touching her inappropriately. Her parents took her to the police to make a report.

The State charged Mercado with two counts of child molesting under Indiana Code section 35-42-4-3(a)(1), one as a Class A felony for an offense that occurred before July 1, 2014, and one as a Level 1 felony, for an offense that occurred after July 1, 2014. During the trial, the State requested to amend Count I to attempted child molesting. The trial court granted the request. The jury returned guilty verdicts on both counts, attempted child molesting (Count I) and child molesting (Count II).

*Mercado v. State*, 119 N.E.3d 237, 2018 WL 6837776, at *1–2 (Ind. Ct. App. Dec. 31, 2018) (cleaned up). He was sentenced to 40 years on each count, to be served consecutively. *Id.* at *3.

On appeal, Mercado raised the following arguments: (1) the trial court erred in refusing to let him present a bank statement and testimony about M.F.'s parents' immigration status as evidence; (2) the court abused its discretion in allowing M.F.'s parents to testify about her reputation for truthfulness; and (3) his sentence was excessive. *Id.* at *1. The court rejected the

2

first two arguments but agreed that his sentence was excessive and reduced it to a total term of 40 years. *Id.* at *2–8. He did not seek transfer to the Indiana Supreme Court. *See* ECF No. 7-2.

In October 2019, he filed a petition for post-conviction relief. ECF No. 7-7. An evidentiary hearing was held at which he, his trial counsel, his wife Beatriz, his wife's brother, and his niece Carol Marquez all testified. ECF No. 8-8. After the hearing, the petition was denied. *Mercado v. State*, 196 N.E.3d 1244, 2022 WL 4361899, at *3 (Ind. Ct. App. Sept. 21, 2022).

On appeal, Mercado asserted three arguments: (1) his counsel was ineffective in failing to adequately investigate the case and call his wife, her brother, and his niece Carol as witnesses; (2) his counsel was ineffective in failing to present evidence that would have shown his last visit with M.F. occurred after she turned fourteen; and (3) his counsel demonstrated a "lack of understanding" of Indiana law. *Id.* at *4. The Indiana Court of Appeals rejected each of these arguments and affirmed the denial of post-conviction relief. *Id.* at *2–6. He sought transfer to the Indiana Supreme Court arguing that his trial counsel was ineffective in (1) failing to call his wife, her brother, and his niece Carol as witnesses and (2) failing to present video and texts proving that his last visit with M.F. occurred after her fourteenth birthday. ECF No. 7-13. The Indiana Supreme Court denied transfer without comment. *Mercado v. State*, 199 N.E.3d 788 (Ind. 2022).

In March 2023, Mercado filed his federal petition asserting three claims: (1) his trial counsel was ineffective in failing to introduce bank records "that would have shown the allegations in Count II could not have occurred before M.F.'s fourteenth birthday"; (2) counsel was ineffective in failing to investigate and present "digital, date-stamped photographs, videos, and text message(s) that would have shown the allegations in Count II could not have occurred

3

before M.F.'s fourteenth birthday"; and (3) counsel "failed to investigate further and present the testimony of Beatriz, which would have contradicted M.F.'s testimony both about where people slept the night of the charged offense and the date on which the charge[d] offense occurred, it if occurred at all." ECF No. 1 at 8. The respondent argues that claims one and two are procedurally defaulted, and alternatively, that all three claims fail on the merits.[1] ECF No. 7.

**ANALYSIS**

The petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (cleaned up). The Court can grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather,

---

[1] Mercado was granted two extensions of time to file a traverse in support of his petition, but he did not file one. *See* ECF Nos. 12, 17.

4

he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Mercado's claims all center on the performance of his trial counsel, Rajeev Bajaj.[2] Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on a claim of ineffective assistance, the petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Harrington*, 562 U.S. at 105. The petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Gilbreath*, 21 F.4th at 981. The Court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised on habeas review: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*,

---

[2] Mercado was also represented at trial by a second attorney, Alfredo Acosta. The record reflects that Mr. Acosta was retained by Mercado in connection with an investigation conducted in Illinois stemming from M.F.'s allegations about incidents of abuse that occurred there. Mr. Acosta was not admitted to practice in Indiana but he was allowed to sit at counsel table to assist Mr. Bajaj during the trial in Indiana. ECF No. 8-2 at 14–15. Mercado focuses his arguments on Mr. Bajaj's actions.

5

562 U.S. at 105. Furthermore, the Court should "evaluate [counsel's] performance as a whole," *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel," *Premo v. Moore*, 562 U.S. 115, 125 (2011). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017). Rather, "[i]t must merely be reasonably competent." *Id.* Counsel is also afforded significant discretion in selecting a trial strategy based on the information known at the time. *Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Gilbreath*, 21 F.4th at 982.

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Gilbreath*, 21 F.4th at 981 (cleaned up). In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id*. at 112. Additionally, if the defendant wanted counsel to raise an argument that had no merit, an ineffective-assistance claim cannot succeed, because "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

The record reflects that Mr. Bajaj had nearly 20 years of experience in criminal law and handled "a lot" of sex offenses prior to representing Mercado. ECF No. 8-8 at 54. The record further reflects that Mr. Bajaj conducted pretrial discovery; met with Mercado and his wife approximately ten times to prepare for trial; argued pretrial motions in limine; gave an opening statement; made objections; cross-examined the state's witnesses, including M.F.; presented the testimony of Mercado; and made a closing statement arguing that the evidence was insufficient to convict. ECF Nos. 8-2, 8-3. With this background in mind, the Court turns to the specific errors asserted by Mercado.

**A.    Bank Records**

In claim one, Mercado argues that his counsel was ineffective in failing to introduce bank records "that would have shown the allegations in Count II could not have occurred before M.F.'s fourteenth birthday." ECF No. 1 at 8. The respondent argues that this claim is procedurally defaulted. ECF No. 7 at 6.

Before considering the merits of a habeas petition, the Court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. *See Davila v. Davis*, 582 U.S. 521, 528 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Id.* at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was

7

presented to the state courts and denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts and the time for doing so has passed. *Davila*, 582 U.S. at 528; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

As the respondent points out, Mercado raised an argument regarding counsel's failure to present bank records in the Indiana Court of Appeals, but he did not include this argument in his petition to transfer to the Indiana Supreme Court. ECF No. 7-13. Because he did not present this claim to the state's court of last resort, it is procedurally defaulted. *See Boerckel*, 526 U.S. at 848. He does not acknowledge his default or provide any grounds for excusing it. Therefore, the claim cannot be considered on the merits.

Assuming for the sake of argument he could overcome the default, the respondent alternatively argues that the claim fails under AEDPA standards. ECF No. 7 at 8-13. Mercado's claim centers on the timing of his final visit with M.F.'s family. To convict him of child molesting, the state was required to show that he engaged in sexual conduct with M.F. while she was under age fourteen.[3] *Mercado*, 2022 WL 4361899, at *5. Count II was alleged to have occurred sometime after July 1, 2014, but before M.F. turned fourteen on September 17, 2014. A primary focus of Mercado's defense—in addition to arguing that M.F. was lying and that no sexual abuse had ever occurred—was arguing that his last visit with M.F. occurred after she had already turned fourteen. In his view, the bank records reflecting certain charges in Indiana posted to his bank account in the second half of September 2014 would have demonstrated that the incident she described where she fell asleep in the living room occurred after her fourteenth birthday.

---

[3] After M.F. turned fourteen, the applicable offense would have been sexual misconduct with a minor, which carries a different sentencing range. Ind. Code § 35-42-4-9(a)(1). By the time of the trial, M.F. was 17 years old and a junior in high school. ECF No. 8-2 at 55.

Prior to Mercado taking the stand, his counsel tendered a bank statement to the prosecutor and stated that Mercado would be referring to it when he testified that he was not in Indiana until after M.F.'s fourteenth birthday. *See* ECF No. 8-3 at 1–3. The prosecutor objected, and the trial court agreed that the bank statement was not admissible to show Mercado's whereabouts, because it only reflected the date certain transactions posted to his account, not the date the transaction actually occurred. *Id.* Indeed, the prosecutor pointed out that the statement reflected some transactions in both Indiana and Illinois on the same date. ECF No. 8-2 at 250. Ultimately, defense counsel decided not to use the bank statement as evidence. *Id.*

In rejecting Mercado's claim on post-conviction review, the Indiana Court of Appeals properly identified *Strickland* as the governing standard. *Mercado*, 2022 WL 4361899, at *3. The court observed that the bank statement was of little relevance, as it was dated the day of M.F.'s fourteenth birthday and showed transactions posted to his account after that date. *Id.* at *6. In the court's view, "[a]t best, the statements only demonstrate[d] that [Mr. Mercado] was in M.F.'s town after she had turned fourteen," but they were "not dispositive of whether he was in town prior to her birthday." *Id.* Thus, the court concluded that Mercado failed to show that had counsel presented the bank statement as evidence, there likely would have been a different outcome to the trial. *Id.*

This was not an objectively unreasonable application of *Strickland*. The bank statement was of limited relevance in proving Mercado's whereabouts in the days leading up to M.F.'s fourteenth birthday, as it was issued on the date of her birthday (September 17) and showed transactions posted to his account between that date and October 14, 2014. ECF No. 8-8 at 118. The statement did not reflect what happened prior to her birthday, nor did it show when the transactions he pointed to actually occurred. *Mercado*, 2022 WL 4361899, at *6. Additionally,

9

both M.F. and her stepfather testified that Mercado and his family arrived prior to her fourteenth birthday and stayed a few days to celebrate with them. ECF No. 8-2 at 87, 131, 134, 148–49. A bank statement dated the day of her birthday and reflecting financial transactions posting to his account after that date would not have contradicted this testimony.

Furthermore, at most the bank statement could have been used to dispute the timing of his last visit to M.F.'s home; however, the state presented evidence that Mercado committed repeated acts of molestation over several years and in two different apartments, including the one where M.F. was living during the summer and fall of 2014. ECF No. 8-3 at 85–94. Mercado admitted on the stand (and his wife confirmed at the post-conviction hearing) that in addition to the late September visit, he also stayed with M.F. and her family in July 2014. ECF No. 8-3 at 44–45; *see also* ECF No. 8-8 at 125. He has not demonstrated that counsel's performance fell below professional norms, or that the outcome of the trial likely would have been different had counsel sought to introduce the bank statement as evidence. Even if the claim was not defaulted, it would not entitle him to federal habeas relief.

**B.      Photographs, Videos, and Text Messages**

In claim two, Mercado makes a related argument that his counsel was ineffective in failing to investigate and discover "digital, date-stamped photographs, videos, and text message(s) that would have shown the allegations in Count II could not have occurred before M.F.'s fourteenth birthday." ECF No. 1 at 8. The respondent argues that this claim is also procedurally defaulted. ECF No. 7 at 7.

As respondent correctly points out, in the state proceeding Mercado made a related—but distinct—claim that his counsel was ineffective for not *introducing* this evidence. He did not present a claim to the Indiana Court of Appeals that his trial counsel was ineffective in failing to

10

investigate, which is the claim he presents here. Therefore, the claim is procedurally defaulted. [4] *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (where petitioner complained about one aspect of counsel's performance in state proceeding but not the specific error he was challenging in federal habeas petition, claim was procedurally defaulted). He does not acknowledge his procedural default or provide any basis for excusing it.

Assuming for the sake of argument he could overcome the default, the respondent alternatively argues that the claim fails on the merits. ECF No. 7 at 14–16. Like his claim about the bank statement, this claim focuses on the timing of his final visit to M.F.'s home in September 2014. Mercado believes that texts, photographs, and a video depicting M.F.'s birthday celebration on September 20, 2014, would prove that his visit did not occur until after she turned fourteen.

At the post-conviction hearing, Mr. Bajaj was asked whether he recalled being given photographs, texts, and videos of the birthday celebration "that were date stamped September 20th, 2014." ECF No. 8-8 at 34. Counsel responded that he never received such evidence. *Id.* In rejecting Mercado's claim that counsel was ineffective in failing to present this evidence at trial, the Indiana Court of Appeals concluded that counsel was never given the evidence and therefore could not be faulted for failing to introduce it. *Mercado*, 2022 WL 4361899, at *5–6. The state court's finding that counsel was never given this evidence is binding in this proceeding. 28 U.S.C. § 2254(e).

---

[4] It appears that he included this claim in his petition to transfer to the Indiana Supreme Court. ECF No. 7-13. However, he was required to raise it at each and every level in the state proceedings to properly exhaust. Additionally, under Indiana law, a party cannot raise a claim in a petition to transfer that was not presented to the lower courts. Ind. R. App. P. 57(G)(3).

Apparently recognizing this problem, Mercado has repackaged his argument to claim that Mr. Bajaj was ineffective in failing to *discover* this evidence.[5] Under the Sixth Amendment, counsel has a "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S at 690–91. The decision whether to investigate must be assessed for reasonableness based on the circumstances known at the time, "applying a heavy measure of deference to counsel's judgments." *Id.* at 691. In determining whether counsel's decisions were reasonable, a federal habeas court must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo*, 562 U.S. at 125. To establish prejudice in connection with counsel's failure to investigate, the petitioner must make a "comprehensive showing" of what further investigation would have revealed. *United States v. Zillges*, 978 F.2d 369, 373 (7th Cir. 1992).

It is evident from the trial and post-conviction records that Mr. Bajaj conducted a thorough investigation of the facts underlying the charges. Among other things, he conducted pretrial depositions and met with Mercado and his wife nearly ten times in preparation for trial. *See* ECF No. 8-8 at 102. If they did not alert him to the existence of this evidence, it is unclear how he would have known about it. Even assuming he knew or should have known about the evidence, pictures and video of M.F.'s birthday celebration on September 20 was of limited relevance in proving Mr. Mercado's innocence. As stated above, both M.F. and her stepfather testified that Mercado and his family arrived prior to her birthday and stayed for a few days to

---

[5] There is no reasoned state court opinion analyzing this claim because Mercado did not present it to the Indiana Court of Appeals, and the Indiana Supreme Court denied his petition to transfer without comment. The Indiana Supreme Court's unreasoned decision, which effectively rejected this claim by denying transfer, is nevertheless entitled to deference on habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 800 (1991).

12

celebrate with them. The fact that the actual celebration may have occurred after her birthday does not prove when Mercado arrived at the house.[6] Nor would it undercut the evidence that he committed multiple acts of molestation during his visits to Elkhart "ever since [M.F.] was little," including during the charged time periods. *See* ECF No. 8-2 at 105. He has not demonstrated that counsel's performance fell below professional norms, or a likelihood that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if the claim was not defaulted, it would not entitle him to federal habeas relief.

**C.     Beatriz's Testimony**

In his final claim, he argues that his trial counsel was ineffective when he "failed to investigate further and present the testimony of Beatriz, which would have contradicted M.F.'s testimony both about where people slept the night of the charged offense and the date on which the charge[d] offense occurred, if it occurred at all." ECF No. 1 at 8. The respondent argues that this claim fails on the merits. ECF No. 7 at 16–20. In rejecting this claim on post-conviction review, the Indiana Court of Appeals applied *Strickland* and concluded that Mercado did not make the necessary showing of prejudice. *Mercado*, 2022 WL 4361899, at *5. This was not an unreasonable application of *Strickland*.

An attorney's decision not to call family members of the accused as witnesses rarely amounts to ineffective assistance, because such witnesses have an obvious reason to provide favorable testimony. *Gilbreath*, 21 F.4th at 988; *see also Bergmann v. McCaughtry*, 65 F.3d

---

[6] There are text exchanges between M.F. and Beatriz included in the post-conviction record, but they are in Spanish. A translation of one exchange was provided by the interpreter at the post-conviction hearing. ECF No. 8-8 at 113–14. The translation reflects a somewhat cryptic exchange in which M.F. asked if Mercado's family had "went out already," to which Mercado's wife replied: "Yes, Daughter. We left with your uncle and your uncle had to close the glass door very well, because we did not have the keys. Lily has them in school, and we were not gonna get time if we waited for your Uncle Paco. I'll call you later." Mercado does not provide a clear explanation of how this exchange proves his whereabouts in the days leading up to M.F.'s fourteenth birthday.

1372, 1380 (7th Cir. 1995) (declining to "second-guess trial counsel's decision not to call [the defendant's] step-father . . . because family members can be easily impeached for bias."). Here, Beatriz had an obvious motive to provide testimony helpful to her husband's defense, making her a less than compelling witness.

Additionally, the testimony Mercado points to was somewhat equivocal, in that Beatriz's recollection appeared to have been based on the usual sleeping arrangements when her family visited. ECF No. 8-8 at 127–28. Yet it is evident from M.F.'s own testimony that she was not supposed to be sleeping in the living room that night; she simply fell asleep there while watching a movie with several family members, including her aunt, and woke to find everyone gone except Mercado. ECF No. 8-2 at 89, 116. Given M.F.'s detailed and unequivocal testimony about what happened when she woke up, it is unlikely that testimony from Mercado's wife about the family's usual sleeping arrangements would have convinced the jury that the incident did not occur. Testimony from his wife about when they arrived for the visit, which conflicted with that of M.F. and her stepfather, also appears unlikely to have convinced the jury that the acts of molestation described by M.F. did not occur. He has not demonstrated that but for an unprofessional error by counsel in connection with this evidence, there is a substantial likelihood that the trial would have turned out differently. *Harrington*, 562 U.S. at 111; *Strickland*, 466 U.S. at 694.

D.    **Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (cleaned up). For the reasons fully explained above, Mercado's claims are procedurally defaulted and without merit under AEDPA standards. The Court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the Court will not issue him a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES the petition [ECF No. 1], and the Court DENIES Mercado a certificate of appealability. The Court DIRECTS the Clerk of Court to close this case.

SO ORDERED on March 18, 2024.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT